# Belcher's Estate.

*Taxation—Collateral inheritance tax—Appeal from appraisement—Notice.*

In the appraisement for collateral inheritance tax the statute gives a right of appeal which necessarily implies notice, and the thirty days limitation of the right of appeal begins only from such notice.  The statute, however, contains no provision for a hearing except in the orphans' court upon appeal.

*Wills—Life estate—Rule in Shelley's case—Collateral tax.*

Testator bequeathed his whole estate practically, to his executors in trust to pay the income to testator's parents, brothers and sisters "in equal proportions, and to the issue of any of said brothers and sisters in case of their death, semiannually for and during the term of their natural lives, and the lives of the survivors of them, . . . . And after the death of my said father or mother, or any of my said brothers and sisters, without issue, then in such an event, the portions of the income of my estate so to be paid to them during their life shall go to the survivor or survivors thereof for and during the remainder of their natural lives; and after the death of my said father and mother and all of my said brothers and sisters as aforesaid, then my estate shall descend to the issue of any of such brothers and sisters who may be living, share and share alike in fee."  *Held,* that the brothers and sisters did not take a fee under the rule in Shelley's case, and that their estates were not taxable as such.

In determining whether the rule in Shelley's case is applicable the test is how the donees in remainder are to take.  If as purchasers under the donor then the particular estate is limited by the literal words of the deed and the rule in Shelley's case has no application.  But if the remaindermen are to take as heirs to the donee of the particular estate, then what

has been called the superior intent as declared in Shelley's case operates and the first donee takes a fee whatever words may be used in describing the estate given to him.

Argued Feb. 21, 1905. Appeal, No. 22, Jan. T., 1905, by Commonwealth, from decree of O. C. Lackawanna Co., Series C., 607, sustaining appeal from collateral tax appraisement in estate of Frank J. Belcher, deceased. Before MITCHELL, C. J. DEAN, BROWN, POTTER and ELKIN, JJ. Affirmed.

Appeal from collateral tax appraisement.

From the record it appeared that testator died March 18, 1901, leaving no widow or children. By his will he gave his estate to his father and mother and brothers and sisters. The material portions of the will are quoted in the opinion of the Supreme Court.

The appraisers taxed the life estate of the brothers and sisters at $4,195.76. This amount was paid by the executors, but a tax upon the remainders amounting to $3,138.11 was resisted.

The executors appealed from the appraisement. It did not appear that they had any notice of the appraisement, and the appeals were taken after the expiration of thirty days from the date of filing the appraisement. The orphans' court sustained the appeal.

*Error assigned* was the decree of the orphans' court.

*Milton W. Lowry*, with him *Troutman, Llewellyn & Fleitz*, for appellant.—The appeal was too late: Harris v. Mercur, 202 Pa. 313; Allen's Estate, 207 Pa. 325; Schrenkeisen v. Kishbaugh, 162 Pa. 45; Ward v. Letzkus, 152 Pa. 318; Friedman v. Smith, 7 Kulp, 504.

The rule in Shelley's case is a rule of law and not of construction. When the language used in the instrument brings the case within the rule the fact that it was the intention of the grantor or devisor that the rule should not operate is of no importance: Bender v. Fleurie, 2 Grant, 345; Grimes v. Shirk, 169 Pa. 74; Sheeley v. Neidhammer, 182 Pa. 163; Shapley v. Diehl, 203 Pa. 566; Haldeman v. Haldeman, 40 Pa. 29; Carroll v. Burns, 108 Pa. 386.

*James E. Burr*, with him *C. R. Pitcher*, for appellees.—The appeal was taken in time: Handley's Estate, 181 Pa. 339; Com. v. Coleman, 52 Pa. 468.

The estate vested by the will in the brothers and sisters of the testator was a life estate: Walker v. Milligan, 45 Pa. 178; Guthrie's App., 37 Pa. 9; McCann v. McCann, 197 Pa. 452; Moser v. Dunkle, 1 Woodward, 388; Bacon's Estate, 202 Pa. 535; Siddall's Estate, 180 Pa. 127; 1 Lewin on Trusts (ed. 1888), star pages 110 and 111.

The word "issue" used in the Belcher will is only prima facie a word of limitation and may be construed to have a less extended meaning: Walker v. Milligan, 45 Pa. 178; Guthrie's Appeal, 37 Pa. 9; Middleswarth's Admr. v. Blackmore, 74 Pa. 414; Taylor v. Taylor, 63 Pa. 481; Shalters v. Ladd, 141 Pa. 349; Snyder's Appeal, 95 Pa. 174; Miller's Estate, 145 Pa. 561.

The word "descend" in the will should be so construed as to make the children of his brothers and sisters purchasers: Keim's Appeal, 125 Pa. 480; Waln's Estate, 189 Pa. 631.

The words "then living" indicate a definite class of persons and not an indefinite failure of issue: Walker v. Milligan, 45 Pa. 178; Middleswarth's Admr. v. Blackmore, 74 Pa. 414; Snyder's Appeal, 95 Pa. 174; Sheets's Estate, 52 Pa. 257; Taylor v. Taylor, 63 Pa. 481; Miller's Estate, 145 Pa. 561; Fahrney v. Holsinger, 65 Pa. 388; McCullough v. Fenton, 65 Pa. 418; Yarnall's Appeal, 70 Pa. 335; Johnson v. Currin, 10 Pa. 498.

The fact that none of Belcher's brothers and sisters had any children at the time of his death, makes no difference: Taylor v. Taylor, 63 Pa. 481; Cote v. VonBonnhorst, 41 Pa. 243; Lantz v. Trusler, 37 Pa. 482; Barclay v. Lewis, 67 Pa. 316.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 1, 1905:

The first question is whether the appeal from the appraisement to the orphans' court was in time. The appraisement was filed July 21, 1902, but no notice given until July 28, and the executors entered their appeal on August 22. Did the time for appeal begin to run from the filing of the appraisement or from the date of notice? The statute is silent on this subject. Its language is that "any person or persons not satisfied

with said appraisement shall have the right to appeal within thirty days to the orphans' court of the proper county." The time for appeal is thus limited to thirty days but the terminus a quo the thirty days are to run is not named, nor is there any express provision for notice. But the requirement of notice is necessarily implied in the right of appeal, for without notice the "party not satisfied" has no certain means of learning that the time for him to move has come, and the privilege of appeal would be nugatory unless he should be fortunate enough to discover the proceeding from other sources. The statute, it is to be noted, fixes no time or mode of procedure. The register of wills is to appoint an appraiser "whenever occasion may require" and the appraiser is only directed "to make a fair and conscionable appraisement." The manner and time of so doing is left to him. In the present case the appraiser was appointed in August and filed his appraisement in the following July. It does not appear that the legatees had any notice of the appointment, and if they had it would be unreasonable to hold them bound at the risk of losing their appeal, to resort to the register's office every thirty days during the eleven months the appraiser was taking his time about the matter. The proceeding was in no sense a judicial one, of whose successive steps parties were bound to take notice. In Hadley's Estate, 181 Pa. 339, it was said, "the statute makes no express provision for notice to them (the legatees) but it gives them the right of appeal, and it would therefore be proper if not requisite that the court should see that notice and a hearing are given. Without such notice and hearing, it is not consistent with the universal principles of law that the parties charged should be affected by the adjudication." The point was only incidentally touched in the case, and that was as far as it was necessary to go. But now that the question is directly raised we hold that notice of the filing of the appraisement is necessarily implied in the right of appeal given by the statute, and the thirty days' limitation of the right begin only from such notice.

The court below held that there should be notice of the appointment of the appraiser, of the time and place of a hearing for the parties, and of the intended filing of the appraisement. The method of procedure suggested is admirable, and apprais-

ers desiring to make a fair, impartial and satisfactory appraisement would do well to follow it. But we cannot say that it is essential. In the assessment or appraisement of property for taxation the taxing officers proceed in accordance with statutory authority which depends on the legislative will. If the statutes do not provide for a hearing or an appeal, then none can be claimed as of right. Ordinarily, the assessment is ex parte, at least in the making of the appraisement in the first instance. In the appraisement for collateral inheritance tax as already said the statute gives a right of appeal which necessarily implies notice, but there is no provision for a hearing except in the orphans' court upon appeal, and we cannot write such provision into the act, desirable as it might be. In the present case the appeal being within thirty days of notice of the filing of the appraisement was in time.

The second question is what estate is presently taxable for collateral inheritance. The testator bequeathed his whole estate practically, to his executors in trust to pay the income to testator's parents, brothers and sisters "in equal proportions, and to the issue of any of said brothers and sisters in case of their death, semiannually for and during the term of their natural lives, and the lives of the survivors of them. . . . And after the death of my said father or mother, or any of my said brothers and sisters, without issue, then in such an event, the portions of the income of my estate so to be paid to them during their life shall go to the survivor or survivors thereof for and during the remainder of their natural lives; and after the death of my said father and mother and all of my said brothers and sisters as aforesaid, then my estate shall descend to the issue of any of such brothers and sisters who may then be living, share and share alike in fee."

It is claimed by the commonwealth that under the rule in Shelley's case the brothers and sisters took a fee, and their estates should be so taxed.

In Shapley v. Diehl, 203 Pa. 566, it was said, "In determining whether the rule in Shelley's case is applicable the test is how the donees in remainder are to take. If as purchasers under the donor then the particular estate is limited by the literal words of the deed and the rule in Shelley's case has no application. But if the remaindermen are to take as heirs to

the donee of the particular estate, then what has been called the superior intent as declared in Shelley's case operates and the first donee takes a fee whatever words may be used in describing the estate given to him." This test negatives the appellant's contention. Under the will each of the testator's brothers and sisters took a life interest in severalty for his own life. As each one died without issue his interest passed to the survivors for their lives. But if any one died leaving issue, the latter took a life interest in their ancestor's share, pur autre vie, that is for the life of the last survivor of the testator's brothers and sisters. When such survivor died, the issue then living of all the brothers and sisters, took a fee, not in succession to their parents per stirpes, but per capita in their own right directly from the testator. The testator gave life estates in severalty with no limitation over in fee to the heirs of any one, but with a contingent remainder in fee to such issue of the life tenants collectively as should be living at the death of the last life tenant. The remaindermen as already said took not as heirs to any one's ancestor, but directly as donees and purchasers under the will. At present there is nothing taxable but life estates.

Judgment affirmed.