## Ernst's Estate.

Argued January 14, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

368

*Louis S. May*, with him *E. Russell Shockley*, Deputy Attorney General, and *Wm. A. Schnader*, Attorney General, for appellant.

*S. Richard Harr, Bernard J. Myers*, of *Zimmerman, Myers & Kready, Paul A. Mueller*, of *Windolph & Mueller, J. Roland Kinzer* and *Charles G. Baker*, for appellees, Nos. 289, 292, 295-9, were not heard.

*Owen P. Bricker* and *John A. Coyle*, for appellees, Nos. 290, 291, 293 and 294, were not heard.

PER CURIAM, February 4, 1935:

The decree is affirmed on the following extracts from the opinion of Judge APPEL, president judge of the court below:

"The decedent died March 2, 1932, testate, and letters testamentary were duly granted to the executors named in the will. On March 15, 1932, H. J. Taylor was duly appointed appraiser by the auditor general of Pennsylvania 'to make a fair and conscionable appraisement of the said estate, and to assess and fix the cash value of all annuities in life estates growing out of said estate,' for the purpose of assessing and fixing the transfer inheritance tax. The appraisement was filed April 28, 1932, and, there being no appeal within the statutory period fixed by law, became absolutely confirmed. The personal estate consists of three classes of items. The third class consists of the accrued interest due on certain annuity contracts created by the decedent in his lifetime upon the occasion of donations made to various churches, hospitals

and homes. It is in respect to these items that the present controversy arises. There would be no controversy at all except for the fact that, nearly eight months after the tax appraisement had been filed and confirmed, the state tax appraiser filed, on December 12, 1932, what he called a supplemental appraisement, in which he undertakes to value and appraise for tax purposes the principal of the various annuity contracts. From this appraisement all of the donees took appeals, as did also the executors of the estate.

"Appellants contend, first, that the supplemental appraisement filed December 12, 1932, is a legal nullity, no appeal having been filed to the appraisement of April 28, 1932, which became absolutely confirmed, and no fraud, accident or mistake of legal merit having been shown. Inasmuch as we have concluded that the first contention of appellants must be sustained, namely, that the supplemental appraisement, filed December 12, 1932, is a legal nullity, no appeal having been filed to the appraisement of April 28, 1932, which became absolutely confirmed, and no fraud, accident or mistake of legal merit having been shown, it is not necessary to consider the second contention, that the principal of the so-called annuity contracts is not legally subject to a transfer inheritance tax under any of the acts relating to the imposition and collection of such tax.

"We find as a fact that a full disclosure of the contracts was made by the executors to the tax appraiser; that they were before the field appraiser for examination and appraisal; that he had full opportunity to and did examine them; that when he appraised the annuity on each con- tract, but not the principal, he did so in the exercise of his deliberate judgment that the principal was not liable for the tax. We find also that due report of the appraisement was made to Taylor, the chief appraiser, adopted and filed by him with a full knowledge of all the facts. After the expiration of the time for appeal, the question was not an open one and the appraisal was conclusive on

all parties. The outstanding authority on the immediate question under consideration is Moneypenny's Est., 181 Pa. 309, [where it was held that] in the absence of fraud, accident or mistake, there cannot be a second appraisement of property for the purpose of the collateral inheritance tax. The only remedy for an erroneous exercise of judgment by the appraiser is an appeal. A second appraisement to revise the judgment of the appraiser is without authority of law."