## Hoffman Estate

*Harry L. Allshouse*, for petitioners.
*Mahady & Mahady*, for Department of Revenue.

COPELAND, P. J., March 15, 1956.—The matter is before the court on a petition to correct the record of the appraisement of real estate belonging to the above-named decedent, and the assessment of inheritance tax thereon, and the answer thereto filed by the Commonwealth.

The facts in this matter are simple and uncontested. Decedent died on April 25, 1955, and the two petitioners herein are the qualified executrices of her estate. An inventory and appraisement was filed on September 24, 1955, showing the only asset as an individual one-third interest in four lots of ground in North Huntingdon Township in this county. A list of debts was filed with the register for inheritance tax purposes in a total amount of $2,135.34. The real estate was appraised by the appraisers for the estate at $5,000. The appraiser for the Inheritance Tax Division of the Department of Revenue, Commonwealth of Pennsylvania, appraised the interest of decedent at $5,000.

The real estate consisted of four lots on two tracts and each tract was appraised by the Department of Revenue at $7,500 for the whole tract or $2,500 for a one-third interest therein. Through an error, the appraiser caused to be sent to the Department of Revenue at Harrisburg an appraisement showing a total appraisement of the one-third interest in the amount of $7,500. This mistake was apparently caused by setting down the total appraisement of the two tracts opposite the one tract and adding thereto the appraisement of the other tract.

When the mistake was discovered, the appraiser so advised the Department of Revenue at Harrisburg, which department refused to correct their records.

The amount of tax in dispute in this case is $50 but the Department of Revenue has employed special coun-

sel to contest the application for the correction of the Commonwealth's error. The Commonwealth does not deny any of the facts, but opposes the correction of the record on three grounds. First, that an appeal cannot be allowed after 30 days from the date of the appraisement; second, that there is no such procedure as a petition for correction of records or any other method than by an appeal, and lastly, that the executrices are not proper parties to take an appeal.

As to the first reason alleged by the Commonwealth, the 30-day period referred to by it was the time allowed for an appeal until May 27, 1943, since which date the period has always been 60 days. Further, such period begins to run only on notice to parties in interest and not from the date of the appraisement, and the record does not indicate any notice to the parties in interest: Belcher's Estate, 211 Pa. 615; Schmuckli's Estate, 47 Lanc. 189, 341 Pa. 36.

However, the present procedure is not such as referred to in the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, and found in 72 PS §2327. There is no dispute or objection to the amount of the appraisement, the judgment of the appraiser, the allowance of any deductions from the gross estate nor the rate of tax.

It has been stated many times by the court that an appraisement and assessment for inheritance tax purposes from which there is no appeal is final and conclusive on all parties. Strangely enough, the leading case in this matter appears to be a lower court case, Borie's Estate, 13 D. & C. 355, wherein Justice Allen M. Stearne, when he was in the orphans' court, said, at page 358: "In my opinion, an appraisal of the clear value of an estate and the assessment of the tax draws, as it were, a red line across the page, and, unappealed from, becomes final, conclusive and binding upon all parties."

This statement of law has been approved in many cases: Sadler's Estate, 383 Pa. 603; McCandless Estate, 374 Pa. 551; Reynolds Estate, 359 Pa. 616; Darsie Estate, 354 Pa. 540; Haid Estate, 347 Pa. 159; Ramsay Estates, 342 Pa. 103. From an examination of these and other cases two things clearly appear. In no case was there an injustice to the taxpayer and the rule stated is subject to the exception in the case where there is fraud, accident or mistake.

There have been many cases where an appeal was allowed or record corrected after the expiration of the statutory appeal period by reason of a mistake. Some of these cases are Shultz Estate, 79 D. & C. 145, where certain shares of stock were inadvertently included in the inventory; Holtzapple Estate, 68 D. & C. 201, where a portion of a trust estate was included in the inventory and was not properly part of decedent's estate; Tagg's Estate, 38 Dauph. 48, where a mortgage was inadvertently included in the inventory. Two other cases where appeals were allowed nunc pro tunc: Heiden Estate, 67 D. & C. 580, and Adams' Estate, 34 D. & C. 93.

It will be noted that in all these cases the mistake was that of the personal representative and the appraisement changed by allowance of appeal or otherwise in order to do justice to the taxpayer. In the present case, the mistake was not by the personal representative or beneficiary of an estate but by the Department of Revenue itself.

For the Commonwealth to say that it cannot correct its own mistake which it admits making and that it will collect a tax which it admits is not due is only ridiculous. Not only does the Commonwealth refuse to correct its own mistake but employs counsel at a fee higher than the amount involved to contend that the court cannot make the correction. Assuming that

the appraiser appraised the real estate in this estate at $5,000, as he actually did, and then over his signature a report was sent to the Department of Revenue which by error failed to show the decimal point and his report read $500,000, would the Commonwealth contend that because no appeal had been taken that they could collect tax in the amount of $10,000?

In the present case there is no question but that a mistake was made on the appraisement and assessment of the tax and that the mistake was made by the Commonwealth, and further, the court said in Tagg's Estate, supra, at page 51: "The Commonwealth is asking that it be paid money to which in justice it is not entitled. This is against public policy and under the above definition would be a constructive fraud."

It is surprising that the Department of Revenue contends in this case that the executrices do not have a right of appeal. It has been held several times that the personal representative can appeal from the appraisement and assessment of inheritance tax whenever he has jurisdiction over the asset: Noel's Estate, 42 D. & C. 614; Romberger Estate, 74 D. & C. 196. Even under the cases arising from estates of decedents dying before the Fiduciaries Act of 1949, the personal representative was held to be a proper person to appeal in the matter of personalty: Moffet Estate, 369 Pa. 159; Cochrane's Estate, 342 Pa. 108; Commonwealth v. Coleman's Administrator, 52 Pa. 468. Since January 1, 1950, the effective date of the Fiduciaries Act of 1949, the distinction between real estate and personal estate has been to a great extent eliminated and the personal representative is responsible for the distribution of both, and can exercise

many powers with respect thereto. This being the present state of the law and there being no case to the contrary, the court holds that the personal representative is now a proper party to appeal and is included as "any persons not satisfied with any appraisement" as contained in section 3 of the Act of May 27, 1943, P. L. 757, 72 PS §2327.

In this particular case, there is a further reason why the personal representative is a party in interest. The sole asset in this estate is the real estate in question and there are debts and expenses of over $2,000 to be paid. This situation of necessity requires the personal representative to administer the real estate. In fact in most cases a necessity to sell in order to pay debts makes a conversion: Lagges Estate, 361 Pa. 205, and Edwards Estate, 168 Pa. Superior Ct. 471.

It would appear that this decision as to the right of the personal representative to appeal would correspond with the actual practice of the Department of Revenue in notifying only the personal representative of the appraisement and looking solely to him for the payment of the tax. Actually, no distinction between tax due on real estate and tax due on personal estate is made by the department when a claim is made for inheritance tax at the audit of an account.

For the reasons stated above, the court is of the opinion that the prayer of the petition to correct the record should be granted. Any regulation of the Department of Revenue that prevents that department from correcting its own bookkeeping mistake has no firm basis in law, equity or common sense.

### Decree

And now, March 15, 1956, after hearing, it is ordered, adjudged and decreed that the inheritance tax appraisement in the above estate filed in the Register's Office of Westmoreland County, on September 30,

1955, at no. 370 of 1955, is hereby corrected to show an appraisement of the real estate of decedent set forth as "second" to be, $2,500 or a total appraisement of all of the real estate of decedent in the amount of $5,000.