## Brantner Estate

*David A. Ody,* for appellant.
*Allen S. Mengal,* for Commonwealth.

EPPINGER, *P.J.*, July 11, 1980—Harry R. Brantner was a resident of Fulton County at the time of his death on May 24, 1966. His widow, Dorothy S. Brantner, was his executrix and administered his estate. Two state inheritance tax appraisements were filed by Paul S. Shimer, state appraiser, the original April 3, 1967 listing only some common stock and declaring there was no jointly held property that was reportable. A supplemental appraisement was filed by Mr. Shimer in September, 1967 listing some real estate. Apparently at no time prior to the filing of any of these appraisements had Mrs. Brantner reported any taxable joint property. Pennsylvania inheritance taxes were paid on an estate of $86,850.

On August 22, 1967 the executrix signed for filing a United States Estate Tax Return listing a business called Brantner Motors valued at $79,435 on

Schedule F.* Sometime in July, 1977 a copy of the Federal return was filed with the Clerk of the Orphans' Court in Fulton County and a copy was received by the Commonwealth's Bureau of County Collections on June 15, 1977. Twenty-seven months later, on October 21, 1979, a second supplemental state appraisement was filed listing two assets, one Brantner Motors valued at $79,435 and Verbal Trust Investors Stock Fund, Inc. valued at $4,250.75, totalling $83,685.75.

The executrix appealed to this court from the second supplemental appraisement raising two issues: (1) Was the second supplemental appraisement filed too late and (2) was Brantner Motors joint property of decedent and his wife, or separate property of decedent.

The filing of returns and assessment of taxes is governed by the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, art. VII, 72 P.S. §2485-701 et seq. A personal representative is required to return decedent's property known to him to be or which may be subject to inheritance tax: 72 P.S. §2485-701. The Secretary of Revenue is then required to make an appraisement within six months after the return is filed. If not made then, it is to be made within such further period as the court shall fix, upon application of any party in interest: 72 P.S. §2485-706.

If a personal representative does not file a return of a taxable transfer, the Commonwealth is not barred from making an appraisement or supplemental appraisement of assets not returned: 72 P.S.

---

*It is important to note as discussion proceeds that the joint property of a decedent and his widow is to be listed on Schedule E of the Federal return.

§2485-710. In this case, it is unquestioned that the personal representative never filed a state return of the assets listed on the supplemental appraisement. However, the Commonwealth did have knowledge of the assets when it received a copy of the Federal return and waited more than two years before filing the supplemental appraisement. There was a philosophy expressed by the Supreme Court in Ramsay Estates, 342 Pa. 103, 20 A. 2d 213 (1941), saying it is unfair, after the passage of time (in that case five years) and after an estate has been distributed, to impose upon the executors the task of proving that an omitted asset had been called to the attention of the appraiser. Despite legislative changes, we believe there is still an element of fairness to the estate to which the Commonwealth must adhere. Setting aside the 12 or more year delay in filing this second supplemental appraisement and considering only the more than two year delay from the time the Commonwealth did know that Brantner Motors was listed as a separate asset on the Federal return, without explanation, that latter delay may be unfair.

There must be some significance to the legislative mandate that appraisements be filed within six months. Despite the contention of the Commonwealth, supported by Grossman and Smith, Pennsylvania Inheritance and Estate Tax, §706-2, that the six month period is not a statute of limitation but only a device by which the executor can prod the Commonwealth, we think the Commonwealth is not granted unlimited time after knowledge to make the appraisement and that a two year delay is too long.

There is another problem connected with the

supplemental appraisement in this case made by J. Louise Mills. When, 13 years after the fact, did she examine the assets known as Brantner Motors so she could appraise them? So far as the record is concerned, the business no longer exists. She had no way of appraising it. Papers filed in the court show that J. Louise Mills made the appraisement at the direction of a superior in the Department of Revenue. He was not shown to have any knowledge of the property except that manifested on the Federal return.

This problem was addressed in Clarke Estate, 73 D. & C. 152 (1950), where a supplemental appraisement, filed three years after the first, raised the value of decedent's property because it sold for a price higher than the appraised price. The court held the supplemental to be invalid, noting that there was no actual appraisement which resulted in the valuation filed and saying the appraisement was placed on record only as a result of a direction to that effect given by a superior who had never seen the property.

Finally, on this point, the passage of time makes it impossible to determine whether Paul S. Shimer, a resident of McConnellsburg, knew all about Brantner Motors and for that reason did not include it in the appraisement. See Kauffman Estate, 81 D. & C. 1 (1952). An appraiser's duty is something more than to pass along information he receives. He must actively seek out the assets of an estate, familiarize himself with the value, and then report that information to the Commonwealth. We have no reason to believe these were not Mr. Shimer's standards. He did not testify at the hearing and that could be a concern, except we understand, outside

the record, that he is deceased and the Commonwealth could not call him.

While from this discussion it is apparent we believe that the Commonwealth may not in this case, after 13 years, file a supplemental appraisement, we are also persuaded that Brantner Motors was jointly owned by decedent and Dorothy S. Brantner. Supporting this is the statement by the attorney for the estate that in preparing the Federal return he erroneously listed Brantner Motors as joint property and that he took no action to correct this error because it (the erroneous listing) had no effect on the Federal tax.

There was credible evidence given by Mrs. Brantner and others whose knowledge goes back to the time when Mr. Brantner was alive and was involved in the community and in Brantner Motors, and their statements supported the contention that the auto firm was jointly owned by decedent and his wife. For instance, Mrs. Brantner told where some of the money came from to start it, it was hers, and there was evidence that the business was operated with jointly owned bank accounts.

For all of the reasons stated, our conclusion is that the supplemental appraisement must be set aside and nullified.

## ORDER

July 11, 1980, the second supplemental appraisement for transfer inheritance tax filed in the estate of Harry R. Brantner, deceased, late of Fulton County, Pennsylvania, filed on October 21, 1979 is set aside and declared null and void. The costs of the proceedings shall be paid by appellants.